**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNIVERSITY LEGAL SERVICES, INC.**,<br>220 I Street NE, Suite 130<br>Washington, DC 20002<br><br>        Plaintiff,<br>v.<br><br>**DISTRICT OF COLUMBIA**, a municipal<br>Corporation;<br><br>**MURIEL BOWSER,** in her official capacity<br>as Mayor of the District of Columbia,<br>John A. Wilson Building,<br>1350 Pennsylvania Avenue, NW<br>Washington, DC 20004;<br><br>**CLINTON LACEY,** in his official capacity<br>as Director of the District of Columbia<br>Department of Youth Rehabilitation Services,<br>450 H Street, NW<br>Washington, DC 20001<br><br>        Defendants. | Civ. No.   1:18-cv-00301 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff University Legal Services, Inc. ("ULS"), the designated Protection and Advocacy program for the District of Columbia, brings this action to enforce its federal law rights to access records pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 *et seq.*, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 *et seq.*, and 42 U.S.C. § 1983 *et seq*. The Protection and Advocacy program at ULS does business as Disability Rights DC at University Legal Services ("Disability Rights DC") and will be referred to as such throughout this complaint.

Defendants have violated the right of Disability Rights DC to obtain from defendants the

complete, unredacted records relating to allegations of abuse and neglect of a child with a disability, including investigations conducted by the District of Columbia Department of Youth Rehabilitation Services ("DYRS").

Defendants' failure to comply with Disability Rights DC's requests for access to records interferes with Disability Rights DC's federal mandate to act to protect people with disabilities in the District of Columbia, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, and determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted, whether a further investigation by Disability Rights DC should be conducted, and whether further corrective action should occur.

Disability Rights DC seeks injunctive and declaratory relief, as well as attorneys' fees, litigation expenses, and costs associated with the filing of this lawsuit.

## PLAINTIFF

1. University Legal Services, Inc. is an independent, non-profit corporation organized under the laws of the District of Columbia and does business as Disability Rights DC. Under both the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, and the DD Act, 42 U.S.C. § 15041 *et seq.*, Congress gives certain federal funding to states provided that the state establishes a Protection and Advocacy ("P&A") system that meets certain specified conditions. Since 1996 and at all times relevant to this action, Disability Rights DC has been and is the designated P&A system with the authority to advocate for the legal and civil rights of citizens of the District of Columbia with disabilities.

## DEFENDANTS

2. The District of Columbia is a municipal corporation ultimately responsible for

overseeing DYRS, "a separate Cabinet-level agency, subordinate to the Mayor, within the executive branch of the government of the District of Columbia."  D.C. Code § 2-1515.02; *see also* D.C. Code § 1-204.22.

3. The District of Columbia's mayor, the Honorable Muriel Bowser, is chief executive officer of the District.  D.C. Code § 1-204.22.  Defendant Bowser is responsible for directing, supervising, and controlling the executive departments of the District of Columbia government.  D.C. Code § 1-204.22.  Defendant Bowser appoints the Director of DYRS.  D.C. Code § 2-1515.02(b).  Defendant Bowser is sued in her official capacity.

4. Clinton Lacey is the Director of DYRS and reports to the mayor.  *Id.*  DYRS is the District's cabinet level juvenile justice agency responsible for the supervision, custody, and care of young people detained in a DYRS facility and/or committed to DYRS by the D.C. Superior Court.  D.C. Code § 2-1515.02.  Defendant Lacey is sued in his official capacity.

5. At all relevant times, the individual defendants, in their official capacities, were and are operating under color of state law as representatives of public entities and within the scope of their public employment.  Further, at all relevant times, the individual defendants, in their official capacities, were and are under an affirmative obligation to provide adequate programs, care, conditions, and services to individuals with a mental illness and developmental disability as defined under the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, and the DD Act, 42 U.S.C. § 15041 *et seq.*, while those individuals are in the custody of DYRS.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this lawsuit include claims arising under federal statutes and federal regulations.  These include civil rights violations governed by 42 U.S.C. §§ 1983 and 1988, as

well as claims under the Fifth Amendment of the United States Constitution, the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, and the DD Act, 42 U.S.C. § 15041 *et seq.*

7. This Court has jurisdiction and authority to enter declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), 1367, 2201, and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure, and is authorized pursuant to 42 U.S.C.§§ 1983 and 1988 to award Disability Rights DC its reasonable attorney's fees, costs, and expenses.

8. Venue is properly brought in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b)(1)-(2) because the Defendants in their respective official capacities reside in the District. The District of Columbia is also the appropriate venue under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Authority of Protection and Advocacy Systems

9. Both the DD Act and the PAIMI Act authorize the designated P&A system to have access to records of persons with disabilities under certain circumstances.[1]

10. As relevant here, federal law specifically grants Disability Rights DC the authority to investigate incidents of abuse and neglect of individuals with mental illness and developmental disabilities when (a) incidents are reported to Disability Rights DC or (b) probable cause exists that the incidents occurred. 42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 15043(a)(2)(B).

---

[1] The PAIMI Act is the statute authorizing the activities regarding individuals with mental illness. 42 U.S.C. § 10801 *et seq.* It is very similar to the DD Act, and the statutes are usually applied in a consistent manner. *See Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 894 F. Supp. 424, 428 (M.D. Ala. 1995) (stating that the "legislative history suggests that the record access provisions of the acts are meant to be 'consistent.'), *aff'd.* 97 F.3d 492 (11th Cir. 1996).

11. Under 42 U.S.C. § 10805(a)(4)(A) and 42 U.S.C. § 15043(a)(2)(I)(i), Disability Rights DC shall have access to all records of any individual if such individual, or his or her legal guardian, conservator, or other legal representative, authorizes Disability Rights DC to have such access.

12. Disability Rights DC is entitled to access draft and final documents, including handwritten notes, electronic files, photographs, and video/ audio tape records. 42 C.F.R. § 51.41(c); 45 C.F.R. § 1326.25(b).

13. Disability Rights DC's access authority includes reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a mental illness or developmental disability. 42 U.S.C. § 10806(b)(3); 42 U.S.C. § 15043(c)(2).

14. Disability Rights DC is authorized to access documents regarding the steps taken to investigate the incidents; reports and records, including personnel records; supporting information that was relied upon in creating a report, including all information and records used and reviewed in preparing reports; records that describe persons who were interviewed; physical and documentary evidence that was reviewed; and related investigative findings. 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25(b).

15. The PAIMI Act's implementing regulations require that access to these records be provided promptly. 42 C.F.R. § 51.41(a). The DD Act requires that access to records must be granted within three business days of making a request. 42 U.S.C. § 15043(a)(2)(J)(i)-(ii); 45 C.F.R. § 1326.25(c)(2).

**DYRS' Failure to Provide Access to Records**

16. C.G. is a person with a mental illness and developmental disability as defined under the PAIMI and DD Acts.

17. In July 2017, Disability Rights DC received complaints that DYRS staff abused and neglected C.G., a child committed to DYRS and detained at the Youth Services Center ("YSC"), a secure 88-bed residential facility operated and overseen by DYRS. YSC is located at 1000 Mount Olivet Road, NE, Washington, DC.

18. The complaints that DRDC received specifically alleged that[2]:

    a. On March 17, 2017, DYRS male staff secluded C.G. in her room and physically restrained her in a prone, face-down position, restricting her breathing and causing her arm to become numb;

    b. On May 18, 2017, DYRS staff physically abused C.G. by hitting her, grabbing her hair, and biting her, resulting in injury. Additionally, DYRS staff pushed C.G. and attempted to strike her. Immediately after suffering injuries as result of this abuse, C.G. requested medical attention for a bite mark on her arm, but DYRS denied C.G. medical attention; and

    c. On June 29, 2017, DYRS staff physically abused C.G. by punching her in the face, causing injury to her face and eye and staff then physically restrained her in a prone, face-down position, resulting in a nose bleed. It was also reported that DYRS staff later came into C.G.'s room when she was asleep and asked her to sign a Medical Refusal form. DYRS delayed

---

[2] The merits of these complaints are not at issue in this lawsuit. This lawsuit concerns Defendants' failure to provide all of the information that Disability Rights DC has requested as part of its investigation into those complaints.

medical attention at Children's National Medical Center to address C.G.'s injuries for three days.

19. Since August 2, 2017, Disability Rights DC has made multiple requests for access to DYRS' records pertaining to C.G. pursuant to its federal P&A authority.

20. On August 2, 2017, Disability Rights DC notified DYRS, in writing, that Disability Rights DC initiated an investigation into the allegations of abuse and neglect of C.G. and requested specific records from DYRS in order to carry out the investigation, including:

    a. C.G.'s medical records;

    b. Video feeds or any other recordings of the incidents;

    c. Any incident reports related to the incidents;

    d. Any investigation reports generated by DYRS or any outside agency that were related to the incident;

    e. Any corrective action plans generated by DYRS;

    f. Any unusual incident reports related to C.G.;

    g. Any documentation or supporting information relied upon to create the reports above; and

    h. A list of responsive documents in DYRS' possession that DYRS maintained it would not disclose and a written statement of the reason(s) for denying access.

21. Disability Rights DC included a signed consent from C.G. and C.G.'s guardian authorizing the release of the requested records.

22. Consistent with the timeframes set forth in the PAIMI Act's implementing regulations and the DD Act, Disability Rights DC requested that DYRS provide the requested

records within three business days.  To the extent records were not immediately available to DYRS, Disability Rights DC requested that DYRS provide records on a rolling basis.

23. DYRS did not provide any records to Disability Rights DC within three business days.  On August 8, 2017, Disability Rights DC reiterated its records request to DYRS in writing.

24. In response to Disability Rights DC's renewed request, DYRS provided some of C.G.'s mental health records on the same day.  They did not, however, provide any documents related to the alleged incidents or any investigation of such incidents.

25. On August 9, 2017, and then again on August 10, 2017, Disability Rights DC reiterated its records request to DYRS in writing.

26. On August 15, 2017, DYRS provided some incident reports and medical and mental health records to Disability Rights DC, but failed to provide all of the records that Disability Rights DC requested.

27. On August 16, 2017, Disability Rights DC requested the remaining records that DYRS failed to send, specifically those regarding any investigations DYRS conducted into the allegations and DYRS and YSC policies.  Disability Rights DC sent multiple follow-up requests.

28. On August 24, 2017, Disability Rights DC reiterated its request to DYRS for the remaining missing records in writing.

29. On September 12, 2017, Disability Rights DC once again reiterated its request to DYRS for the remaining missing records in writing and by telephone.

30. On September 15, 2017, DYRS provided two redacted investigation reports related to the May 2017 and June 2017 incidents, but failed to provide any investigation report regarding the March 2017 incident.  DYRS also failed to provide the majority of the documents

noted and relied upon in DYRS' investigation reports dated August 2, 2017 and September 8, 2017, including, but not limited to:

    a.    referral documents for the investigations conducted;

    b.    emails between DYRS staff regarding the incidents under investigation;

    c.    photographs taken of C.G.'s injuries;

    d.    supervisor reports regarding the incidents under investigation;

    e.    log book records;

    f.    correspondence between C.G. and DYRS staff regarding the incidents under investigation;

    g.    any handwritten notes; and

    h.    video recordings.

31. On September 21, 2017, Disability Rights DC contacted DYRS in writing and requested the missing records and a meeting. DYRS did not respond to Disability Rights DC's September 21, 2017 request.

32. On October 11, 2017, Disability Rights DC again requested in writing the remaining missing records. DYRS did not respond to this letter.

## PLAINTIFF'S CLAIMS

### COUNT 1: Violation of the PAIMI Act, 42 U.S.C. § 10805 et seq., and DD Act, 42 U.S.C. § 15043 et seq., and Their Implementing Regulations, and 42 U.S.C. § 1983

33. Plaintiff re-alleges each and every allegation contained above as if fully set forth herein.

34. Under the PAIMI and DD Acts, Disability Rights DC is the designated protection and advocacy program for individuals with mental illness and developmental disabilities and is

entitled to access to information needed to perform its investigatory, advocacy, and monitoring role on an informed basis. Defendants collectively, and each of them individually, acting under color of state law, continue to deprive Disability Rights DC of its rights under the provisions of the PAIMI Act, 42 U.S.C. § 10805 *et seq.*, the DD Act, 42 U.S.C. § 15043 *et seq.*, and 42 U.S.C. § 1983.

35. In July 2017, Disability Rights DC received complaints that C.G. had been subjected to abuse or neglect while in the custody of DYRS. Pursuant to its authority under 42 U.S.C. § 10805(a)(1)(A) and 42 U.S.C. § 15043(a)(2)(B), Disability Rights DC requested copies of certain types of records from defendants in order to investigate these reported incidents of abuse and neglect.

36. Disability Rights DC is authorized to access the records of C.G. pursuant to 42 U.S.C. § 10805(a)(4)(A) and 42 C.F.R. § 51.41 and 42 U.S.C. § 15043(a)(2)(I) and 45 C.F.R. § 1326.25.

37. The records requested by Disability Rights DC fall within the broad description of records under 42 U.S.C. § 10806(b)(3) of the PAIMI Act and 42 C.F.R. § 51.41(c); as well as the broad description of records under 42 U.S.C. § 15043(c)(2) of the DD Act and 45 C.F.R. § 1326.25(b). Disability Rights DC must have access to these records to complete a thorough investigation.

38. DYRS has failed to provide complete, non-redacted records to Disability Rights DC as required by the PAIMI and DD Acts. 42 U.S.C. § 10805(a)(4)(A); 42 U.S.C. § 15043(a)(2)(I); 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25.

39. Under 42 U.S.C. § 10805(a)(4)(A) and 42 U.S.C. § 15043(a)(2)(I)(i), Disability Rights DC is authorized to have access to all records of any individual when the individual or his

or her legal guardian authorizes such access. Where, as here, Disability Rights DC has provided defendants with such authorization, defendants' refusal to promptly provide complete, non-redacted records to Disability Rights DC violates the PAIMI and DD Acts.

40. Defendants' refusal to provide a written statement of reasons for the delay in providing and its denial of requested records to Disability Rights DC violates the PAIMI and DD Acts and their implementing regulations. 42 C.F.R. § 51.43; 45 C.F.R. § 1326.26.

41. Defendants have maintained and continue to maintain a policy and/or practice of failing to provide timely responses to Disability Rights DC's requests to access records pursuant to Disability Rights DC's authority as the designated P&A system.

42. Monetary damages would not compensate Plaintiff for the harm it has sustained, and continues to sustain, as a result of Defendants' failure to provide records intrinsic to its mandated protection and advocacy role. Plaintiff has no adequate remedy at law and continues to suffer irreparable harm as a result of defendants' (in)actions.

### COUNT 2: Violation of 42 U.S.C. § 1983

43. Plaintiff re-alleges each and every allegation contained above as if fully set forth herein.

44. Defendants collectively and each of them individually, acting under color of state law, have violated and continue to violate the rights of Disability Rights DC under the PAIMI and DD Acts by preventing Disability Rights DC from (1) conducting a complete investigation as set forth in those statutes and regulations when Disability Rights DC has received a complaint that abuse or neglect has occurred and (2) fulfilling its obligations under the PAIMI and DD Acts. 42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 15043(a)(2)(B).

45. Due to their violations of the law cited herein, defendants are liable for violation

of 42 U.S.C § 1983, which prohibits the deprivation under color of state law of rights secured by the United States Constitution and laws.

46. Defendants have maintained and continue to maintain a policy and/or practice of (a) failing to provide timely responses to Disability Rights DC's requests to access records pursuant to Disability Rights DC's authority as the designated P&A system, and (b) failing to provide Disability Rights DC with complete documents, records, and information as set forth in the PAIMI and DD Acts.

47. Monetary damages would not compensate Plaintiff for the harm it has sustained, and continues to sustain, as a result of Defendants' failure to provide records intrinsic to its mandated protection and advocacy role. Plaintiff has no adequate remedy at law and continues to suffer irreparable harm as a result of defendants' (in)actions.

48. Plaintiff is entitled to relief under 42 U.S.C. § 10805(a)(4)(A), 42 U.S.C. § 15043(a)(2)(B), 42 C.F.R. § 51.41(b)(1), 45 C.F.R. § 1326.25(a)(1), and 42 U.S.C. § 1983.

49. Due to their violations of the law cited herein, defendants are liable and Plaintiffs are entitled to declaratory and injunctive relief, attorneys' fees, expenses, costs, and other relief, all as set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

(1) a declaratory judgment that Defendants have violated Plaintiff's rights under the DD Act, the PAIMI Act, and 42 U.S.C. § 1983;

(2) an injunction ordering Defendants to immediately provide Plaintiff with complete, non-redacted copies of all records requested in Plaintiff's multiple written requests pursuant to its federally mandated P&A authority;

(3) an injunction ordering Defendants to provide timely and complete responses to any and all future records requests made by Plaintiff pursuant to its federally mandated P&A authority;

(4) an award of attorneys' fees, expenses, and costs; and

(5) any other relief that the Court deems appropriate.

Dated:  February 9, 2018               Respectfully submitted,

                                                                  /s/
DISABILITY RIGHTS DC
Sandra Bernstein, Esq. (Bar No. 455355)
Mary Nell McGarity Clark, Esq. (Bar No. 419732)
Lyndsay Niles, Esq.  (Bar No. 1003427)
220 I Street, NE, Suite 130
Washington, DC 20002
Tel:  202-547-0198
Fax:  202-547-2662 (not for service)

*Of counsel:*

Leslie A. Davis, Esq. (Bar No. 481138)
Matthew Cohen, Esq. (Bar No. 987395)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116