## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNIVERSITY LEGAL SERVICES, INC.,**<br>220 I Street NE, Suite 130<br>Washington, DC 20002<br><br>            Plaintiff,<br><br>v.<br><br>**DISTRICT OF COLUMBIA**, a municipal<br>Corporation;<br><br>**MURIEL BOWSER,** in her official capacity<br>as Mayor of the District of Columbia,<br>John A. Wilson Building,<br>1350 Pennsylvania Avenue, NW<br>Washington, DC 20004;<br><br>**CLINTON LACEY,** in his official capacity<br>as Director of the District of Columbia<br>Department of Youth Rehabilitation Services,<br>450 H Street, NW<br>Washington, DC 20001<br><br>            Defendants. | Civ. No. 1:18-cv-00301 |

## <u>FIRST AMENDED COMPLAINT FOR DECLARATORY</u>
## <u>AND INJUNCTIVE RELIEF</u>

Plaintiff University Legal Services, Inc. ("ULS"), the designated Protection and Advocacy program for the District of Columbia, brings this action to enforce its federal law rights to access records pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 *et seq.*, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 *et seq.*, and 42 U.S.C. § 1983 *et seq*.  The Protection and Advocacy program at ULS does business as Disability Rights DC at University Legal Services ("Disability Rights DC") and will be referred to as such throughout this complaint.

Defendants have violated the right of Disability Rights DC to promptly obtain from Defendants the complete, unredacted records relating to allegations of abuse and neglect of individuals with disabilities under their supervision and/or care.  Most recently, the District of Columbia Department of Youth Rehabilitation Services ("DYRS") refused to provide Disability Rights DC access to records regarding the alleged abuse of a minor, that is, until this lawsuit was filed.  Then, within a matter of days, DYRS made a sizable document production without objections or attempts to try to withhold any information or materials (except other minors' names), all of which demonstrates beyond question that there was no legitimate basis for withholding any of these materials in the first place.

Defendants' repeated failure to comply with Disability Rights DC's requests for access to records in the time set forth under the PAIMI Act and DD Act interferes with Disability Rights DC's federal mandate to act to protect people with disabilities in the District of Columbia, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, and determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted, whether a further investigation by Disability Rights DC should be conducted, and whether further corrective action should occur.

Moreover, Defendants have unlawfully maintained and continue to maintain a policy and/or practice of failing to provide timely responses to Disability Rights DC's requests to access records pursuant to Disability Rights DC's authority as the designated P&A system for the District of Columbia.  Disability Rights DC, therefore, seeks injunctive and declaratory relief, as well as attorneys' fees, litigation expenses, and costs associated with the filing of this lawsuit to address and remedy this ongoing and illegal situation.  Although Defendants have made a

2

substantially complete document production since the initial filing of this lawsuit on February 9, 2018 specific to the underlying "C.G. investigation," this case is not moot. *Advocacy Center v. Stalder*, 128 F.Supp.2d 358, 364 (M.D. La. 1999) (finding that the production of records did not moot the action). Disability Rights DC cannot be required to go to court every time it initiates an investigation involving DYRS or an agency of the District of Columbia because Defendants refuse to comply with the law. It will be unable to fulfill its federal mandate to effectively and promptly investigate complaints of abuse or neglect as prescribed by the PAIMI and PADD statutes.

As one federal district court stated recently, "it is not simply that the records should be produced, but that they be produced *promptly*. The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties. An injunction mandating that the defendant furnish the records within the time contemplated by the Protection and Advocacy Acts would "make a difference." *Mich. Prot. & Advocacy Serv. v. Flint Cmty. Sch.*, 146 F.Supp.3d 897, 904 (E.D. Mich. 2015) (emphasis in original) (internal citation omitted). That is the relief sought by Disability Rights DC as set forth below. The "heavy burden of establishing mootness lies with the party asserting a case is moot." *Brustein & Manasevit, PLLC v. U.S. Dept. of Educ.*, 30 F. Supp.3d 1, 5 (D.D.C. 2013) (quoting *Honeywell Int'l, Inc. v Nuclear Regulatory Comm'n.*, 628 F.3d 568, 576 (D.C. Cir. 2010) (internal quotation marks and citation omitted).

## **PLAINTIFF**

1.      University Legal Services, Inc. is an independent, non-profit corporation organized under the laws of the District of Columbia and does business as Disability Rights DC. Under both the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, and the DD Act, 42 U.S.C. § 15041 *et*

*seq.*, Congress gives certain federal funding to states provided that the state establishes a Protection and Advocacy ("P&A") system that meets certain specified conditions. Since 1996 and at all times relevant to this action, Disability Rights DC has been and is the designated P&A system with the authority to advocate for the legal and civil rights of citizens of the District of Columbia with disabilities.

## DEFENDANTS

2.     The District of Columbia is a municipal corporation ultimately responsible for overseeing DYRS, "a separate Cabinet-level agency, subordinate to the Mayor, within the executive branch of the government of the District of Columbia."  D.C. Code § 2-1515.02; *see also* D.C. Code § 1-204.22.

3.     The District of Columbia's mayor, the Honorable Muriel Bowser, is chief executive officer of the District.  D.C. Code § 1-204.22.  Defendant Bowser is responsible for directing, supervising, and controlling the executive departments of the District of Columbia government.  D.C. Code § 1-204.22.  Defendant Bowser appoints the Director of DYRS.  D.C. Code § 2-1515.02(b).  Defendant Bowser is sued in her official capacity.

4.     Clinton Lacey is the Director of DYRS and reports to the mayor.  *Id.*  DYRS is the District's cabinet level juvenile justice agency responsible for the supervision, custody, and care of young people detained in a DYRS facility and/or committed to DYRS by the D.C. Superior Court.  D.C. Code § 2-1515.02.  Defendant Lacey is sued in his official capacity.

5.     At all relevant times, the individual Defendants, in their official capacities, were and are operating under color of state law as representatives of public entities and within the scope of their public employment.  Further, at all relevant times, the individual Defendants, in their official capacities, were and are under an affirmative obligation to provide adequate

4

programs, care, conditions, and services to individuals with a mental illness and developmental

disability as defined under the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, and the DD Act, 42 U.S.C.

§ 15041 *et seq.*, while those individuals are in the custody of DYRS.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 because this lawsuit includes claims arising under federal statutes and federal

regulations.  These include civil rights violations governed by 42 U.S.C. §§ 1983 and 1988, as

well as claims under the Fifth Amendment of the United States Constitution, the PAIMI Act, 42

U.S.C. § 10801 *et seq.*, and the DD Act, 42 U.S.C. § 15041 *et seq.*

7.      This Court has jurisdiction and authority to enter declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), 1367, 2201, and 2202 and Rules 57 and 65 of

the Federal Rules of Civil Procedure, and is authorized pursuant to 42 U.S.C. §§ 1983 and 1988

to award Disability Rights DC its reasonable attorneys' fees, costs, and expenses.

8.      Venue is properly brought in the United States District Court for the District of

Columbia pursuant to 28 U.S.C. § 1391(b)(1)-(2) because the Defendants in their respective

official capacities reside in the District.  The District of Columbia is also the appropriate venue

under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff's claims

occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Authority of Protection and Advocacy Systems

9.      Both the DD Act and the PAIMI Act authorize the designated P&A system to

have access to records of persons with disabilities under certain circumstances.[1]

---

[1] The PAIMI Act is the statute authorizing the activities regarding individuals with mental

10.     As relevant here, federal law specifically grants Disability Rights DC the authority to investigate incidents of abuse and neglect of individuals with mental illness and developmental disabilities when (a) incidents are reported to Disability Rights DC or (b) probable cause exists that the incidents occurred.  42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 15043(a)(2)(B).

11.     Under 42 U.S.C. § 10805(a)(4)(A) and 42 U.S.C. § 15043(a)(2)(I)(i), Disability Rights DC shall have access to all records of any individual if such individual, or his or her legal guardian, conservator, or other legal representative, authorizes Disability Rights DC to have such access.

12.     Disability Rights DC is entitled to access draft and final documents, including handwritten notes, electronic files, photographs, and video/ audio tape records.  42 C.F.R. § 51.41(c); 45 C.F.R. § 1326.25(b).

13.     Disability Rights DC's access authority includes reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a mental illness or developmental disability.  42 U.S.C. § 10806(b)(3); 42 U.S.C. § 15043(c)(2).

14.     Disability Rights DC is authorized to access documents regarding the steps taken to investigate the incidents; reports and records, including personnel records; supporting information that was relied upon in creating a report, including all information and records used and reviewed in preparing reports; records that describe persons who were interviewed; physical

---

illness.  42 U.S.C. § 10801 *et seq.*  It is very similar to the DD Act, and the statutes are usually applied in a consistent manner.  *See Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 894 F. Supp. 424, 428 (M.D. Ala. 1995) (stating that the "legislative history suggests that the record access provisions of the acts are meant to be 'consistent.'), *aff'd.* 97 F.3d 492 (11th Cir. 1996).

and documentary evidence that was reviewed; and related investigative findings.  42 C.F.R. §
51.41; 45 C.F.R. § 1326.25(b).

15.     The PAIMI Act's implementing regulations require that access to these records be
provided promptly.  42 C.F.R. § 51.41(a).  The DD Act requires that access to records must be
granted within three business days of making a request.  42 U.S.C. § 15043(a)(2)(J)(i)-(ii); 45
C.F.R. § 1326.25(c)(2).

**DYRS' Failure to Provide Timely Access to Records**

16.     Defendants have maintained and continue to maintain a policy and/or practice of
failing to provide timely responses to Disability Rights DC's requests to access records pursuant
to Disability Rights DC's authority as the designated P&A system for the District of Columbia as
evidenced in the underlying C.G. investigation.

17.     C.G. is a person with a mental illness and developmental disability as defined
under the PAIMI and DD Acts.

18.     In July 2017, Disability Rights DC received complaints that DYRS staff abused
and neglected C.G., a child committed to DYRS and detained at the Youth Services Center
("YSC"), a secure 88-bed residential facility operated and overseen by DYRS.  YSC is located at
1000 Mount Olivet Road, NE, Washington, DC.

19.     The complaints that DRDC received specifically alleged that[2]:

a.      On March 17, 2017, DYRS male staff secluded C.G. in her room
and physically restrained her in a prone, face-down position, restricting
her breathing and causing her arm to become numb;

---

[2]   The merits of these complaints are not at issue in this lawsuit.  This lawsuit concerns
Defendants' failure to promptly provide all of the information that Disability Rights DC has
requested as part of its investigation into those complaints.

b.    On May 18, 2017, DYRS staff physically abused C.G. by hitting her, grabbing her hair, and biting her, resulting in injury.  Additionally, DYRS staff pushed C.G. and attempted to strike her.  Immediately after suffering injuries as result of this abuse, C.G. requested medical attention for a bite mark on her arm, but DYRS denied C.G. medical attention; and

c.    On June 29, 2017, DYRS staff physically abused C.G. by punching her in the face, causing injury to her face and eye and staff then physically restrained her in a prone, face-down position, resulting in a nose bleed.  It was also reported that DYRS staff later came into C.G.'s room when she was asleep and asked her to sign a Medical Refusal form.  DYRS delayed medical attention at Children's National Medical Center to address C.G.'s injuries for three days.

20.    Beginning on August 2, 2017, Disability Rights DC made multiple requests for access to DYRS' records pertaining to C.G. pursuant to its federal P&A authority.

21.    On August 2, 2017, Disability Rights DC notified DYRS, in writing, that Disability Rights DC initiated an investigation into the allegations of abuse and neglect of C.G. and requested specific records from DYRS in order to carry out the investigation, including:

a.    C.G.'s medical records;

b.    Video feeds or any other recordings of the incidents;

c.    Any incident reports related to the incidents;

d.    Any investigation reports generated by DYRS or any outside agency that were related to the incident;

e.    Any corrective action plans generated by DYRS;

     f.       Any unusual incident reports related to C.G.;

     g.      Any documentation or supporting information relied upon to create the reports above; and

     h.      A list of responsive documents in DYRS' possession that DYRS maintained it would not disclose and a written statement of the reason(s) for denying access.

22.     Disability Rights DC included a signed consent from C.G. and C.G.'s guardian authorizing the release of the requested records.

23.     Consistent with the timeframes set forth in the PAIMI Act's implementing regulations and the DD Act, Disability Rights DC requested that DYRS provide the requested records within three business days.  To the extent records were not immediately available to DYRS, Disability Rights DC requested that DYRS provide records on a rolling basis.

24.     DYRS did not provide any records to Disability Rights DC within three business days.  On August 8, 2017, Disability Rights DC reiterated its records request to DYRS in writing.

25.     In response to Disability Rights DC's renewed request, DYRS provided some of C.G.'s mental health records on the same day.  They did not, however, provide any documents related to the alleged incidents or any investigation of such incidents.

26.     On August 9, 2017, and then again on August 10, 2017, Disability Rights DC reiterated its records request to DYRS in writing.

27.     On August 15, 2017, DYRS provided some incident reports and medical and mental health records to Disability Rights DC, but failed to provide all of the records that Disability Rights DC requested.

28.     On August 16, 2017, Disability Rights DC requested the remaining records that DYRS failed to send, specifically those regarding any investigations DYRS conducted into the allegations and DYRS and YSC policies.  Disability Rights DC sent multiple follow-up requests.

29.     On August 24, 2017, Disability Rights DC reiterated its request to DYRS for the remaining missing records in writing.

30.     On September 12, 2017, Disability Rights DC once again reiterated its request to DYRS for the remaining missing records in writing and by telephone.

31.     On September 15, 2017, DYRS provided two redacted investigation reports related to the May 2017 and June 2017 incidents, but failed to provide any investigation report regarding the March 2017 incident.  DYRS also failed to provide the majority of the documents noted and relied upon in DYRS' investigation reports dated August 2, 2017 and September 8, 2017, including, but not limited to:

    a.     referral documents for the investigations conducted;

    b.     emails between DYRS staff regarding the incidents under investigation;

    c.     photographs taken of C.G.'s injuries;

    d.     supervisor reports regarding the incidents under investigation;

    e.     log book records;

    f.     correspondence between C.G. and DYRS staff regarding the incidents under investigation;

    g.     any handwritten notes; and

    h.     video recordings.

32.     On September 21, 2017, Disability Rights DC contacted DYRS in writing and

requested the missing records and a meeting. DYRS did not respond to Disability Rights DC's September 21, 2017 request.

33. On October 11, 2017, Disability Rights DC again requested in writing the remaining missing records. DYRS did not respond to this letter.

34. Defendants have maintained and continue to maintain a policy and/or practice of failing to provide timely responses to Disability Rights DC's requests to access records pursuant to Disability Rights DC's authority as the designated P&A system for the District of Columbia as evidenced in this Disability Rights DC investigations and records request.

35. DYRS's lack of cooperation and response to Disability Rights DC's requests did not start with the C.G. investigation. In fact, Defendants have maintained a policy and/or practice of failing to provide timely responses to Disability Rights DC's requests to access records pursuant to Disability Rights DC's authority as the designated P&A system for years.

36. For example, in 2014, DYRS refused to cooperate with an investigation initiated by Disability Rights DC into a report that a child's arm was fractured and the child sustained bruising after being physically assaulted by a peer while in DYRS custody. In response to a records request made by Disability Rights DC with the consent of the youth and the youth's guardian, DYRS demanded that Disability Rights DC seek a court order for access to the records despite federal statutory and case law authority requiring prompt production of the records absent a court order because the PAIMI and PADD statutes preempt state law restricting P&A access to records.

37. After attempting to amicably resolve the access issues with DYRS from July 31, 2014 until September 19, 2014, which included sending numerous emails, speaking with DYRS' assistant general counsel on the phone, offering a meeting to discuss the dispute, and

sending a memorandum outlining the basis for Disability Rights DC's access authority, DYRS still refused to provide the requested records and Disability Rights DC made the decision to close the matter without pursuing a court order, due in part to lack of resources.

38.     In the summer of 2013, Disability Rights DC initiated an investigation based on a complaint that staff at a District psychiatric hospital physically abused a child in its care and fractured her arm while administering a physical hold.   After a social worker at the local hospital where the child received treatment for her fracture contacted the DC Child and Family Services Agency (CFSA) to report allegations of physical abuse by the psychiatric hospital staff, on July 1, 2013, Disability Rights DC sent notice of the investigation based on its federal authority and a records request to CFSA for any investigative reports and/or incident reports related to the restraint incident.  CFSA responded by improperly requiring Disability Rights DC to submit a Freedom of Information Act ("FOIA") request.   Disability Rights DC never received the requested records and was forced to investigate without CFSA records partly because it did not have the resources to initiate a court action against CFSA to obtain the records.

39.     Or, just last year, another agency of defendant District of Columbia, the Office of the State Superintendent of Education ("OSSE"), asserted improperly that Disability Rights DC needed to submit a "FOIA request" to receive records after Disability Rights DC initiated an investigation into the alleged abuse of a child who had been placed at an out-of-state treatment facility.

40.     In that case, Disability Rights DC requested the set of records on May 23, 2017. It did not receive the records until five months later after needlessly exerting a substantial amount of time and resources explaining to OSSE why it was entitled to the records as the

District of Columbia's P&A.

41.     To address the Defendants' years of stonewalling Disability Rights DC on access to records, on February 9, 2018, Disability Rights DC filed its initial Complaint and a Motion for Preliminary Injunction ("Motion") against Defendants to obtain records in the C.G. investigation.

42.     On February 23, 2018, in response to the Complaint and Motion, Defendants made a first production in the C.G. investigation consisting of documents responsive to Plaintiff's requests.

43.     On March 2, 2018, Defendants made a supplemental document production.

44.     In each of these instances in which Defendants either denied Disability Rights DC any access to the records or delayed in providing them, Disability Rights DC "was required to devote significant resources . . . after defendant[s'] improperly denied [Disability Rights DC] its ability to investigate complaints of abuse and neglect." *Disability Rights N.Y. v. N. Colonie Bd. of Educ.*, 2017 WL 1901958, 2017 U.S. Dist. LEXIS 69593, at *5 (N.D.N.Y. May 8, 2017).  In fact, as of the date of this filing, Disability Rights DC has spent more than 120 hours preparing to file and litigate this complaint alone.  This is time it did not spend addressing other concerns of abuse or neglect of District citizens with disabilities.

## PLAINTIFF'S CLAIMS

## COUNT 1:  Violation of the PAIMI Act, 42 U.S.C. § 10805 et seq., and DD Act, 42 U.S.C. § 15043 et seq., and Their Implementing Regulations

45.     Plaintiff re-alleges each and every allegation contained above as if fully set forth herein.

46.     Under the PAIMI and DD Acts, Disability Rights DC is the designated protection and advocacy program for individuals with mental illness and developmental disabilities and is

entitled to prompt access to information needed to perform its investigatory, advocacy, and monitoring role on an informed basis.  Defendants collectively, and each of them individually, acting under color of state law, have deprived and continue to deprive Disability Rights DC of its rights under the provisions of the PAIMI Act, 42 U.S.C. § 10805 *et seq.*, and the DD Act, 42 U.S.C. § 15043 *et seq.*

47.     For example, as set forth above and incorporated herein, in July 2017, Disability Rights DC received complaints that C.G. had been subjected to abuse or neglect while in the custody of DYRS.  Pursuant to its authority under 42 U.S.C. § 10805(a)(1)(A) and 42 U.S.C. § 15043(a)(2)(B), Disability Rights DC requested copies of certain types of records from Defendants in order to investigate these reported incidents of abuse and neglect.

48.     Disability Rights DC is authorized to access such records pursuant to 42 U.S.C. § 10805(a)(4)(A) and 42 C.F.R. § 51.41 and 42 U.S.C. § 15043(a)(2)(I) and 45 C.F.R. § 1326.25.

49.     The records requested by Disability Rights DC fall within the broad description of records under 42 U.S.C. § 10806(b)(3) of the PAIMI Act and 42 C.F.R. § 51.41(c); as well as the broad description of records under 42 U.S.C. § 15043(c)(2) of the DD Act and 45 C.F.R. § 1326.25(b).  Disability Rights DC must have access to these records to complete a thorough investigation.

50.     DYRS failed to provide complete, non-redacted records to Disability Rights DC as required by the PAIMI and DD Acts until Disability Rights DC filed a lawsuit on February 9, 2018.  42 U.S.C. § 10805(a)(4)(A); 42 U.S.C. § 15043(a)(2)(I); 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25.  That is nearly *six* months after the initial request.

51.     Under 42 U.S.C. § 10805(a)(4)(A) and 42 U.S.C. § 15043(a)(2)(I)(i), Disability Rights DC is authorized to have prompt access to all records of any individual when the

14

individual or his or her legal guardian authorizes such access.  Where, as here, Disability Rights DC has provided Defendants with such authorization, Defendants' refusal to promptly provide complete, non-redacted records to Disability Rights DC violates the PAIMI and DD Acts.

52.   Defendants' refusal to provide a written statement of reasons for the delay in providing and its denial of requested records to Disability Rights DC violates the PAIMI and DD Acts and their implementing regulations.  42 C.F.R. § 51.43; 45 C.F.R. § 1326.26.

53.   Defendants past conduct indicates that prompt compliance with future records requests by Disability Rights DC under the PAIMI and DD Acts is far from certain.  And nothing has "eradicated" the problems caused by the tardy production of the records of the Plaintiff's client(s).  *Mich. Prot. & Advocacy Serv.,*146 F.Supp.3d at 904-905.  Nor should Plaintiff's requests be subject to FOIA restrictions or timelines.  *Georgia Advocacy Office v. Reese*, 184 F. Supp.3d 1379, 1383 (N.D. Ga. 2016); *Mich. P&A v. Evans*, No. 09-1224, 2010 WL 3906259, at *2 (E.D. Mich. Sept. 30, 2010) ("analysis under FOIA is not appropriate.")

54.   Disability Rights DC has suffered because of Defendant's violations of the PAIMI and PADD laws.  Significant resources have been wasted fighting to obtain records it was entitled to receive within days.  Moreover, Disability Rights DC has closed investigations or has been unable to perform investigations in a timely manner because of Defendants' conduct, resulting in Disability Rights DC's inability to perform the functions prescribed by federal law and take action to protect District citizens with disabilities.

55.   Monetary damages would not compensate Plaintiff for the harm it has sustained, and continues to sustain, as a result of Defendants' failure to provide records intrinsic to its mandated protection and advocacy role.  Plaintiff has no adequate remedy at law and continues to suffer irreparable harm as a result of Defendants' (in)actions.

56.     Plaintiff is entitled to both a declaratory judgment that Defendants have violated Plaintiff's rights under the DD Act and the PAIMI Act, and an injunction ordering Defendants to provide timely and complete responses to any and all future records requests made by Plaintiff pursuant to its federally mandated P&A authority.  *See Mich. Prot. & Advocacy Servs*, 146 F.Supp.3d at 908 (holding, in part, that defendants, *in all other cases*, must provide access to the records of any individual with a condition covered under the PAIMI Act or Protection and Advocacy for Individual Rights (PAIR) Act within five business days (*see* 42 C.F.R. § 51.41(a), requiring that access be provided "promptly.")) (emphasis added); *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 364 (M.D. La. 1999) (injunction ordered) ("it cannot be disputed that the delay in getting a court order frustrates the goal of the PAIMII Act."); s*ee also* Statement of Interest of the United States, *Disability Rights N.Y. v. N. Colonie Bd. of Ed*, Case No. 114-cv-744, dated July 2, 2015 at 19, https://www.ada.gov/briefs/north_colonie_soi.pdf.  ("Requiring P&As to go to court every time they seek access afforded by the statute would frustrate the goals of PAIMI and unnecessarily burden the courts....The PAIMI Act does not require P&As to seek court authorization every time they wish to conduct statutorily mandated activities…"); *Protection and Advocacy of Persons with Disabilities v. Mental Health & Addiction Services*, 448 F.3d 119, 129 (2d Cir. 2006) (Sotomayor, J.) (affirming District Court's injunction of state agency for failure to provide documents).

## COUNT 2: Violation of the PAIMI Act, 42 U.S.C. § 10805 et seq., DD Act, 42 U.S.C. § 15043 et seq., and 42 U.S.C. § 1983

57.     Plaintiff re-alleges each and every allegation contained above as if fully set forth herein.

58.     Defendants collectively and each of them individually, acting under color of state law, have violated and continue to violate the rights of Disability Rights DC under the PAIMI

and DD Acts by preventing Disability Rights DC from (1) conducting a complete investigation as set forth in those statutes and regulations when Disability Rights DC has received a complaint that abuse or neglect has occurred and (2) fulfilling its obligations under the PAIMI and DD Acts.  42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 15043(a)(2)(B).

59.     Due to their violations of the law cited herein, Defendants are liable for violation of 42 U.S.C § 1983, which prohibits the deprivation under color of state law of rights secured by the United States Constitution and laws.  *Mo. Prot. & Advocacy Services v. Missouri Dept. of Mental Health*, 447 F.3d 1021 (8th Cir. 2006) (Circuit court recognized the § 1983 claim but held that the Director was not liable because he was protected by qualified immunity); *Disability Rights N.Y. v. N. Colonie Bd. of Educ.*, 2017 WL 1901958, 2017 U.S. Dist. LEXIS 69593, at *5 (May 8, 2017) (following injunction, plaintiff could recover costs and more than $85,000 attorneys' fees pursuant to § 1983 based on the school's refusal to provide access to its campus and the records of certain students); *Mich. Prot. & Advocacy Serv.,* 146 F.Supp.3d at 904 (in a § 1983 action, court issued injunction that future records be provided within five business days even though records in the current proceeding had already been provided);  *Mich. P&A v. Evans*, 2010 WL 3906259, at *2 (E.D. Mich. 2010) (court ordered permanent  injunction for denial of one set of records and awarded attorneys' fees under § 1988); *Office of Prot. and Advocacy of Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003) (injunction ordered against Department of Corrections in a § 1983 action for denying access to records); *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 364 (M.D. La. 1999) (injunction ordered against warden of correctional facility for denying access to records based on its § 1983 claim).

60.     Defendants have maintained and continue to maintain a policy and/or practice of (a) failing to provide timely responses to Disability Rights DC's requests to access records

pursuant to Disability Rights DC's authority as the designated P&A system, and (b) failing to provide Disability Rights DC with complete documents, records, and information as set forth in the PAIMI and DD Acts.   Defendants' voluntary cessation of the unlawful conduct after commencement of this lawsuit does not demonstrate that the District will respond in the future as required by law.   To the contrary, the fact that Disability Rights DC was required to file a lawsuit before the agency responded and either delayed or refused to provide records altogether in the past demonstrates that the District will delay or refuse in the future if there is no declaratory judgment or injunction issued.

61.     Moreover, as set forth above, Defendants policy and/or practice is evidenced by (i) DYRS's refusal to provide prompt access to Disability Rights DC to records pertaining to the alleged abuse and neglect of C.G.; (ii) DYRS's past refusal to provide any records as detailed above; (iii) CFSA's failure to provide records following a requirement that Disability Rights DC submit a FOIA request after receiving a records request and notice of an investigation of an allegations of abuse of a child whose arm had been broken during a restraint; and (iv) OSSE's assertion that Disability Rights DC needed to submit a FOIA request to receive records after Disability Rights DC initiated an investigation into the alleged abuse of a child who had been placed at an out-of-state treatment facility and delayed response for months.

62.     Disability Rights DC has suffered because of Defendant's violations of the PAIMI and PADD laws.   Significant resources have been wasted fighting to obtain records it was entitled to receive within days.   Moreover, Disability Rights DC has closed investigations or has been unable to perform investigations in a timely manner because of Defendants' conduct, resulting in Disability Rights DC's inability to perform the functions prescribed by federal law and take action to protect District children with disabilities.

63.     Monetary damages would not compensate Plaintiff for the harm it has sustained, and continues to sustain, as a result of Defendants' failure to provide records intrinsic to its mandated protection and advocacy role.  Plaintiff has no adequate remedy at law and continues to suffer irreparable harm as a result of Defendants' (in)actions.

64.     Plaintiff is entitled to relief under 42 U.S.C. § 10805(a)(4)(A), 42 U.S.C. § 15043(a)(2)(B), 42 C.F.R. § 51.41(b)(1), 45 C.F.R. § 1326.25(a)(1), and 42 U.S.C. § 1983.

65.     Due to their violations of the law cited herein, Defendants are liable and Plaintiff is entitled to declaratory and injunctive relief, attorneys' fees, expenses, costs, and other relief, all as set forth in the prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

(1) a declaratory judgment that Defendants have violated Plaintiff's rights under the DD Act, the PAIMI Act, and 42 U.S.C. § 1983;

(2) an injunction ordering Defendants to provide within five business days to Plaintiff any additional records related to C.G. that have not yet been produced;

(3) an injunction ordering Defendants to provide timely and complete responses to any and all future records requests made by Plaintiff pursuant to its federally mandated P&A authority;

(4) an award of attorneys' fees, expenses, and costs; and

(5) any other relief that the Court deems appropriate.

Dated:  March 22, 2018

Respectfully submitted,

___/s/_____

DISABILITY RIGHTS DC
Sandra Bernstein, Esq. (Bar No. 455355)
Mary Nell McGarity Clark, Esq. (Bar No. 419732)
Lyndsay Niles, Esq.  (Bar No. 1003427)
220 I Street, NE, Suite 130
Washington, DC 20002
Tel:  202-547-0198
Fax:  202-547-2662 (not for service)

*Of counsel:*

Leslie A. Davis, Esq. (Bar No. 481138)
Matthew Cohen, Esq. (Bar No. 987395)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2018, a copy of the foregoing ***First Amended Complaint for Declaratory and Injunctive Relief*** was filed electronically and will be served through the Court's ECF notification system on all parties.

/s/ Matthew Cohen_____