**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| UNIVERSITY LEGAL SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18-cv-0301 (KBJ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff University Legal Services, operating as Disability Rights DC

("DRDC"), serves as the protection and advocacy (P&A) system for the District of

Columbia. (*See* First Am. Compl. ("FAC"), ECF No. 14, at 1.)[1] Two federal statutes—

the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"),

42 U.S.C. §§ 15001–15115, and the Protection and Advocacy for Individuals with

Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801–10851—task DRDC with

protecting, and advocating for, the rights of individuals with developmental disabilities

and mental illnesses. These statutes specifically provide DRDC with a "federal

mandate to act to protect people with disabilities in the District of Columbia,

investigate allegations of abuse and neglect, provide legal advocacy for people with

disabilities, and determine whether investigations . . . [are] fully and independently

conducted[.]" (*Id.* at 2.)

---

[1] Page-number citations to documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

In the instant lawsuit, DRDC alleges that the District of Columbia, D.C. Mayor Muriel Bowser, in her official capacity, and Clinton Lacey, the Director of the D.C. Department of Youth and Rehabilitative Services ("DYRS"), in his official capacity (collectively, "Defendants"), "have violated the right of [DRDC] to promptly obtain from Defendants the complete, unredacted records relating to allegations of abuse and neglect of individuals with disabilities under their supervision and/or care." (*Id.* at 2, ¶¶ 2–5.) DRDC's First Amended Complaint contains two counts: Count 1 is a claim brought under the DD and PAIMI Acts based on Defendants' alleged ongoing failure to provide records to DRDC timely (*see id.* at ¶¶ 45–56), and Count 2 is a claim brought under section 1983 of Title 42 of the United States Code ("Section 1983") based on Defendants' alleged violation of DRDC's statutory rights as the P&A system for the District (*see id.* at ¶¶ 57–65).

Before this Court at present is Defendants' Motion to Dismiss DRDC's First Amended Complaint. (*See* Defs.' Mot. to Dismiss First Am. Compl. ("Defs.' Mot."), ECF No. 15.) Defendants argue that DRDC's claims are moot, due to the District's production of certain records relating to one alleged instance of abuse. (*See id.* at 13–17; *see also* Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), ECF No. 18, at 8–13). Defendants also argue that DRDC's Section 1983 claim should be dismissed, because DRDC has failed to allege facts sufficient to support municipal liability. (*See* Defs.' Mot. at 19–25; *see also* Defs.' Reply at 13–18.) In the alternative, Defendants move to dismiss the Section 1983 claim (Count 2) as duplicative of Count 1 (*see* Defs.' Mot. at 25; *see also* Defs.' Reply at 18–19), and they further argue that any claims

against the individual defendants should be dismissed as duplicative of the claims against the District (*see* Defs.' Mot. at 28–29; *see also* Defs.' Reply at 20–21).

For the reasons explained below, this Court concludes that DRDC's claims are not moot because they are based on an allegedly ongoing policy of the District. However, because DRDC has not pleaded facts that can plausibly support municipal liability under any theory, Count 2 must be dismissed; and DRDC's claims against the individual defendants will be dismissed as duplicative of its claims against the District. Accordingly, Defendants' motion will be **GRANTED IN PART** and **DENIED IN PART**: the Court will **DISMISS** without prejudice DRDC's Section 1983 claim in Count 2 and DRDC's claims against the individual defendants, while DRDC's Count 1 claim against the District will be permitted to proceed.

## I.    BACKGROUND

### A.    Protection And Advocacy Systems Pursuant To The DD And PAIMI Acts

The DD Act provides states with federal funding "to improve community services, such as medical care and job training, for individuals with developmental disabilities." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 250 (2011) (citation omitted).  A parallel statute, the PAIMI Act, provides funding for similar protections for the mentally ill.  *See id.* (citation omitted).  Both the DD and PAIMI Acts are based upon congressional findings that individuals with developmental disabilities and mental illnesses are uniquely susceptible to discrimination, neglect, and abuse, *see* 42 U.S.C. §§ 15001(a)(4),(5) (DD Act); *id.* §§ 10801(a)(1),(3) (PAIMI Act), and that preexisting state systems for monitoring and supporting these individuals were inadequate, *see id.* §§ 15001(a)(6),(11) (DD Act); *id.* § 10801(a)(4) (PAIMI Act).

As a condition of receiving federal funding under the DD and PAIMI Acts, a state must establish a system "to protect and advocate the rights of individuals" with developmental disabilities and mental illnesses, which is commonly referred to as a "P&A system." *Id.* § 15043(a)(1) (DD Act); *id.* § 10803(2)(A) (PAIMI Act). The DD and Paimi Acts further require that state P&A systems have comprehensive investigatory powers. *See Ctr. For Legal Advocacy v. Hammons*, 323 F.3d 1262, 1270 (10th Cir. 2003) (describing the statutorily mandated records access as "quite broad"); *see also Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996). These broad powers include "the authority to investigate incidents of abuse and neglect . . . if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred[.]" 42 U.S.C. § 15043(a)(2)(B) (DD Act); *id.* § 10805(a)(1)(A) (PAIMI Act). Moreover, consistent with certain statutory requirements, P&A systems must be granted access to "all records" of individuals who may have been abused, *see id.* § 15043(a)(2)(I)(iii)(II) (DD Act); § 10805(a)(4)(B)(iii) (PAIMI Act), as well as "other records that are relevant to conducting an investigation," *id.* § 15043(a)(2)(J)(i). To this end, the PAIMI Act's implementing regulations require that access to records be "extended promptly." 42 C.F.R. § 51.41(a).[2] Likewise, the DD Act specifies that covered entities must grant access to records "within three business days" of the request. 42 U.S.C. § 15043(a)(2)(J)(i); 45 C.F.R. § 1326.25(c)(2).[3]

---

[2] The Center for Mental Health Services, within the Substance Abuse and Mental Health Services Administration under the Department of Health and Human Service ("HHS"), promulgated the PAIMI Act's implementing regulations. *See* Substance Abuse and Mental Health Services Administration; Requirements Applicable to Protection and Advocacy of Individuals with Mental Illness; Final Rule, 62 Fed. Reg. 53548-01, 53548, 53559 (Oct. 15, 1997).

[3] The Administration on Intellectual and Developmental Disabilities, within the Administration for

In addition to investigatory powers, P&A systems also have the statutory authority to vindicate the purposes of the DD and PAIMI Acts by "pursu[ing] administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness," 42 U.S.C. § 10805(a)(1)(B), or developmental disabilities, *id.* § 15043(a)(2)(A)(i).

## B.    Factual And Procedural Background[4]

DRDC has served as the designated P&A program for the District of Columbia since 1996. (*See* FAC at ¶ 1.) At some point in July of 2017, DRDC received complaints that, over a period of several months, DYRS staff physically abused and neglected "C.G.," a child who had been committed to DYRS custody and was detained at the Youth Services Center in Washington, D.C. (*See id.* at ¶¶ 17–19.) On August 2, 2017, DRDC made the first of a series of specific, repeated requests to DYRS for records related to the alleged abuse of C.G. (*See id.* at ¶¶ 20–22.) From August to October of 2017, DYRS provided some—but not all—of the requested records. (*See id.* at ¶¶ 23–33.)

On February 9, 2018, DRDC filed a complaint in this Court, along with a motion for a preliminary injunction seeking the outstanding records regarding C.G. (*See* Compl., ECF No. 1; Mot. for a Prelim. Injunction, ECF No. 3; *see also* FAC at ¶ 41.) Two weeks later, on February 23, 2018, Defendants produced records regarding C.G., and they supplemented this production on March 2, 2018. (*See* FAC at ¶¶ 42–43.) On

---

Community Living under HHS, promulgated the DD Act's implementing regulations. *See* Developmental Disabilities Program, 80 Fed. Reg. 44796-01, 44796, 44802, 44817 (July 27, 2015).

[4] The facts recited in this opinion are gleaned from Plaintiffs' First Amended Complaint, and this Court has treated the complaint's allegations as true for the purpose of resolving the instant motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

March 8, 2018, the parties appeared for a status conference, during which DRDC withdrew its motion for a preliminary injunction in light of Defendants' document productions.  (*See* Min. Entry of Mar. 8, 2018.)  The Court expressed some concerns about possible mootness and DRDC's failure to plead the pattern and practice claim that DRDC's counsel seemed to assert.  (*See generally* Tr. of Mar. 8, 2018 Status Conference.)

On March 22, 2018, DRDC filed a First Amended Complaint, which lamented "Defendants' repeated failure to comply with [DRDC's] requests for access to records in the time set forth under the PAIMI Act and DD Act[.]"  (*See* FAC at 2.)  To demonstrate this alleged failure, DRDC added allegations concerning three additional incidents and claimed that they were indicative of Defendants' years-long "policy and/or practice of failing to provide timely responses" to DRDC's requests.  (*See* FAC at ¶¶ 34–35.)  Specifically, in addition to DYRS's failure to provide C.G.'s records timely in 2017, DRDC alleged that: (1) in 2014, DYRS refused to provide records related to a DRDC investigation into a report that a child was physically assaulted, and DYRS required DRDC to seek a court order for access to the records (*see id.* at ¶¶ 36–37); (2) in the summer of 2013, the D.C. Child and Family Services Agency demanded that DRDC submit a Freedom of Information Act ("FOIA") request in response to a records request related to a DRDC investigation into a child abused at a psychiatric hospital (*see id.* at ¶ 38); and in 2017, the Office of the State Superintendent of Education asserted that DRDC needed to submit a FOIA request to obtain records about alleged abuse of a child in an out-of-state facility (*see id.* at ¶¶ 39–40).

Defendants filed the Motion to Dismiss that is presently before the Court on April 12, 2018 (*see* Defs.' Mot.), and this Court held a hearing on Defendants' motion on February 12, 2019 (*see* Feb. 12, 2019 Hr'g Tr. ("Tr.")). In briefing and through oral argument, Defendants maintain that the entire case is moot in light of the District's production of C.G.'s records, and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (*See* Defs.' Mot. at 13–19; Defs.' Reply at 8–13.) Defendants also argue that DRDC has not plausibly alleged municipal liability as required to sustain a Section 1983 claim against Defendants, and that, therefore, Count 2 must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mot. at 19–25; Defs.' Reply at 13–18.) In the alternative, Defendants contend that Count 2 should be dismissed as duplicative of Count 1. (*See* Defs.' Mot. at 25; Defs.' Reply at 18–19.) Defendants also ask the Court to dismiss all of the official capacity claims against the two individual defendants—D.C. Mayor Muriel Bowser and DYRS Director Clinton Lacey—which Defendants view as entirely duplicative of the claims against the District. (*See* Defs.' Mot. at 28–29; Defs.' Reply at 20–21.)

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Motions To Dismiss For Lack Of Subject-Matter Jurisdiction

"The doctrines of standing, mootness, and ripeness are '[t]hree inter-related' doctrines of justiciability that determine the 'constitutional boundaries' of a court's jurisdiction." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 102 (D.D.C. 2016) (quoting *Worth v. Jackson*, 451 F.3d 854, 855, 857 (D.C. Cir. 2006)). A determination that a claim is moot means that "the court lacks jurisdiction to entertain the claim, and

must dismiss it." *Id.* at 103. Accordingly, a challenge to a complaint based on mootness is properly raised under Federal Rule of Civil Procedure 12(b)(1), which allows defendants to challenge claims for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Jeong Seon Han*, 223 F. Supp. 3d at 102–03, 110 (reviewing motion to dismiss on mootness grounds under Rule 12(b)(1)); *Friends of Animals v. Salazar*, 670 F. Supp. 2d 7, 10–11 (D.D.C. 2009) (same). And, while it is ordinarily the burden of a plaintiff to prove that a court has subject-matter jurisdiction, when mootness is at issue, "[t]he initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot[.]" *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citation omitted). The party opposing mootness bears the burden of proving that an exception to the doctrine applies. *See id.*

In determining whether to dismiss a claim as moot under Rule 12(b)(1), "the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han*, 223 F. Supp. 3d at 103 (internal quotation marks and citations omitted). However, courts apply "closer scrutiny" to factual allegations in a Rule 12(b)(1) analysis than in a Rule 12(b)(6) analysis, because federal courts have an independent, affirmative obligation to ensure that they have jurisdiction. *See Delta Air Lines, Inc. v. Export-Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015).

### B. Rule 12(b)(6) Motions To Dismiss For Failure To State A Claim Upon Which Relief Can be Granted

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). If the complaint "fail[s] to state a claim upon which relief can be granted[,]" the

Court must dismiss it. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Plaintiffs need not provide "detailed factual allegations," but they must include facts that "raise a right to relief above the speculative level" and that "nudge[] their claims across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks and citations omitted).

It is the moving party's burden to show that a complaint is legally insufficient. *See Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016). "[T]he Court must construe the complaint in favor of the plaintiff," but it need not accept unsupported inferences or "legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted). When resolving a motion to dismiss under Rule 12(b)(6), a court is limited to the "four corners of the complaint, as well as any documents attached as exhibits or incorporated by reference, documents upon which the plaintiff's complaint necessarily relies, and facts of which the Court may take judicial notice." *Tyson v. Brennan*, 306 F. Supp. 3d 365, 369 (D.D.C. 2017) (internal quotation marks, alteration, and citation omitted).

III.   **ANALYSIS**

   A.   **DRDC's Claims Are Not Moot Because There Has Been No Intervening Event That Affects The Claims Presented In The Operative Complaint**

"The mootness inquiry . . . asks whether events subsequent to the filing of the complaint 'have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Hardaway v. D.C. Housing Auth.*, 843 F.3d 973, 978 (D.C. Cir. 2016) (quoting *Am. Bar Assoc. v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011)).  When a potentially impactful event occurs after the filing of the complaint but before the resolution of the case, the court must assess whether the parties have "a continuing interest in the litigation[,]" *see id.* at 979 (internal quotation marks omitted), and if it decides that they do not, the court must suspend its exercise of jurisdiction over the matter.  This is because, as the Supreme Court has explained, "mootness . . . deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

Many different kinds of events may moot a case, including changes of law or fact due to government action, the conduct of the parties, or the passage of time.  For example, if a plaintiff files a lawsuit challenging an order of a court or other adjudicative body, subsequent proceedings that alter that order may render the case moot.  *See, e.g.*, *Holiday CVS, LLC v. Holder*, 493 Fed. Appx. 108 (D.C. Cir. 2012) (finding a challenge to an administrative order moot when the order was no longer in effect due to subsequent administrative proceedings).  Similarly, when a plaintiff files suit to question the legality of a law, the repeal or expiration of that law will moot the case.  *See, e.g.*, *Burke v. Barnes*, 479 U.S. 361, 365 (1987) (finding the case moot when

the challenged bill expired during the pendency of the appeal); *Fund for Animals v. Mainella*, 335 F. Supp. 2d 19, 23–24 (D.D.C. 2004) (finding a challenge to a regulation authorizing a time-limited bear hunt moot upon conclusion of the hunt). The parties' own conduct may moot a case as well, as happens when they reach a settlement. *See U.S. Bancorp Mortg. Co. v. Bonner Mail Partnership*, 513 U.S. 18, 25 (1994). And mootness can also occur due to a change in the parties' circumstances or relationship over time. *See, e.g.*, *Kemna*, 523 U.S. at 3, 18 (holding that a prisoner's suit attacking termination of his parole status became moot once he was released from prison); *Dove v. United Sates*, 423 U.S. 325, 325 (1976) (per curiam) (dismissing petition for certiorari where civil plaintiff died and the cause of action did not survive death); *Brewer v. Lynch*, 8-cv-1747, 2015 WL 13604257, *9 (D.D.C. 2015) (dismissing claims for declaratory and injunctive relief against defendant employer as moot where plaintiff was no longer an employee and had no prospect of returning as an employee).

In order for this Court to assess properly whether an event subsequent to the filing of the instant lawsuit has rendered the claims that DRDC is making moot, as Defendants argue, the Court must first identify what DRDC's claims entail. In this regard, per the plain language of DRDC's amended complaint, this lawsuit is *not* simply and solely about DYRS's failure *to provide records about C.G.*, but instead arises from DYRS's alleged ongoing pattern of failing to provide records timely when DRDC requests them, in violation of the DD and PAIMI Acts. For example, although the introductory paragraphs of DRDC's complaint previously referred to DRDC's inability to obtain prompt access to records "relating to allegations of abuse and neglect of *a* child[,]" the amended complaint now references Defendants' alleged repeated failure to

provide DRDC with timely access to records pertaining to such "*individuals*." (*See* Redlined Version of Am. Compl., ECF No. 14-1 at 2 (emphasis added); *see also id.* at ¶ 48 (replacing "the records of C.G." with "such records").) Moreover, where DRDC once presented C.G.'s case—alone—as the facts underlying its claims, C.G.'s facts are now offered as but one example of the District's allegedly unlawful conduct (*see id.* at 2 (adding "Most recently . . ."); *see also id.* at ¶ 47 (adding "For example . . .")), and DRDC has added other examples of the District's failure to comply with the DD and PAIMI Acts (*see id.* at ¶¶ 36–40).

Additionally, and importantly, the language that DRDC uses to describe its claims has been amended to allege specifically that Defendants' "repeated" failures to provide timely access constitute more than isolated failures to provide records in one or more individual cases and instead amount to an unlawful "policy and/or practice." (*Id.* at 2–3 (adding the following sentence: "Defendants have unlawfully maintained and continue to maintain a policy and/or practice of failing to provide timely responses to [DRDC]'s requests to access records pursuant to [DRDC]'s authority as the designated P&A system for the District of Columbia."); *see also id.* at ¶ 16 (adding a nearly identical sentence); ¶¶ 34–35 (adding similar language); ¶ 61 (describing evidence of alleged "policy and/or practice").) Thus, it is clear beyond cavil that DRDC has brought a claim that now transcends its concerns about access to C.G.'s records and encompasses a broader complaint about the District's persistent failure to honor DRDC's records requests as the DD and PAIMI Acts require.[5]

---

[5] DRDC's brief in opposition and its arguments at the motion hearing further bolster this interpretation of DRDC's claims. (*See, e.g.*, Tr. at 5:24–5:25 (characterizing DRDC's legal claim as a "continuing claim . . . about the relationship between [DRDC] and DYRS"); *see also* Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 16, at 9 ("Defendants have refused repeatedly to provide records requested by

Significantly for present purposes, it is also quite clear that Defendants have failed to point to any *event* subsequent to the filing of DRDC's amended complaint that has even conceivably altered or impacted DRDC's claim concerning DYRS's alleged ongoing failure to provide timely access to records.  In this regard, Defendants insist that, because C.G.'s records have now been produced, DRDC's claims are moot.  (*See* Defs.,' Mot. at 14–16; *see also* Tr. at 14:23–15:2 (confirming that Defendants' mootness argument "rests on the total and complete production [of C.G.'s records] since the initiation of this lawsuit").)   But Defendants have not explained how the provision of records related to C.G. eight months after DRDC requested them and only after DRDC filed a lawsuit has any bearing on DRDC's current contention that DYRS's unlawfully tardy tender of C.G.'s records is, unfortunately, par for the course.  (*See* Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 16, at 18 ("[A]n active controversy continues to exist between the parties because . . . Defendants *regularly* fail to comply with their obligation to provide requested records within the statutorily-prescribed timeframes." (emphasis added)); *see also id.* at 28–29.)

To be sure, Defendants might well have acted to address the alleged unlawful practice that DRDC identifies in its amended complaint—say, by issuing a statement to all agencies explaining the requirements of the DD and PAIMI Acts and requiring them to provide records within three days, or promptly, as required by the law—and if Defendants had opted to do so, there would be a colorable argument that such a

---

DRDC in connection with its statutory access and investigative authority."); *id.* at 14 ("Defendants' repeated actions of denying access to records and refusing to promptly provide complete, unredacted records relating to allegations of abuse and neglect of individuals with disabilities prevented DRDC from protecting C.G. and hundreds of other individuals with disabilities in the custody and/or care of Defendants."); *id.* at 18, 28–29, 32, 40–41.)

subsequent event renders the claims that DRDC seeks to litigate in the instant case moot. But as things currently stand, Defendants have done nothing other than produce requested records with respect to C.G., and not only did this event occur prior to the filing of DRDC's amended complaint, *see Hardaway*, 843 F.3d at 978, but it also has no impact whatsoever on the right that DRDC seeks to vindicate here: its statutory right to production of documents in a timely fashion, which DRDC alleges that DYRS routinely violates as a matter of practice. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) ("[A] plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy."); *see also Goings v. Court Services and Offender Supervision Agency for D.C.*, 786 F. Supp. 2d 48, 62–63 (D.D.C. 2011) (holding that a challenge to a no contact order was not mooted even though certain conditions of the order had been modified); *Worth v. Jackson*, 483 F. Supp. 2d 1, 7 (D.D.C. 2004) (declining to dismiss as moot claims based on ongoing agency policies and practices even though certain formal directives codifying those policies had been superseded).

The fact that "the District has indicated no intention of declining to follow the requirements of the DD Act and the PAIMI Act where applicable" (Defs.' Mot. at 15) is of no moment. To start, this observation rejects DRDC's allegation that the District maintains a practice of failing to fulfill its statutory obligations and thus flouts a fundamental tenet of Rule 12(b) motions. *See Jeong Seon Han*, 223 F. Supp. 3d at 103 (explaining that "the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged"). It is also entirely irrelevant to Defendants' mootness concerns, because

Defendants' mere representation, made in the context of litigation, that they have no intention of failing to do what the law requires neither relates to any intervening change in fact or law nor neuters any claim that Defendants have heretofore maintained a practice of unlawful behavior, as Defendants themselves concede. (*See* Tr. at 18:7–18:17 (admitting that "a bare representation" that the District intends to follow the law does not moot DRDC's claim that the District has an ongoing practice of failing to provide timely records).)

Finally, while the parties devote much of their briefing to whether any *exception* to mootness applies such that the Court can continue to exercise jurisdiction over this case (*see, e.g.*, Defs.' Mot. at 13–19; Pl's. Opp'n at 16–30; Defs.' Reply at 8–13), these arguments are plainly predicated on the assumption that "events subsequent to the filing of the complaint" have rendered claims moot, so that an exception is required in order to sustain this Court's exercise of its subject-matter jurisdiction. But Defendants have failed to identify any event subsequent to the filing of the operative complaint that has mooted the present controversy, as explained above. Therefore, Defendants have not carried their "heavy burden" of establishing mootness in the first place, *see Honeywell*, 628 F.3d at 576, and this Court need not consider whether any exceptions to mootness might otherwise apply.

Accordingly, Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss DRDC's claims as moot.

## B.     Count 2 Must Be Dismissed Because DRDC Has Failed To Allege Facts Sufficient To Support Municipal Liability

"To state a claim for relief against a municipality under Section 1983, a plaintiff must satisfy two requirements: she must plead 'a predicate [federal or] constitutional

violation' and that 'a custom or policy of the municipality caused the violation.'" *Blue*

*v. Dist. of Columbia*, 811 F.3d 14, 18 (D.C. Cir. 2015) (quoting *Baker v. Dist. of*

*Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *see also Monell v. Dep't of Soc.*

*Servs. of the City of New York*, 436 U.S. 658, 690 (1978). Significantly for present

purposes,

> [t]his circuit has identified several ways in which a plaintiff may allege a
> municipal policy or custom. Specifically, she may point to (1) "the explicit
> setting of a policy by the government that violates the [law]," (2) "the action of a
> policy maker within the government," [or] (3) "the adoption through a knowing
> failure to act by a policy maker of actions by his subordinates that are so
> consistent that they have become 'custom[.]'"

*Blue*, 811 F.3d at 18–19 (quoting *Baker*, 326 F.3d at 1306).[6] It is important to note that

allegations of *respondeat superior* (also known as vicarious liability) are not enough to

establish municipal liability under Section 1983. *See City of Canton v. Harris*, 489

U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95). Instead, the complaint must

plausibly allege "that a municipal policy was the moving force behind the [alleged]

violation[.]" *Baker*, 326 F.3d at 1306 (internal quotation marks and citations omitted);

*see also Page v. Mancuso*, 999 F. Supp. 2d 269, 282 (D.D.C. 2013) (collecting cases

explaining the pleading standard for municipal liability).

The first prong of municipal liability is indisputably sufficiently alleged in this

case: Defendants do not, and cannot, contest that failing to provide records timely in

accordance with the requirements of the DD and PAIMI Acts is a violation of federal

---

[6] One other means of establishing municipal liability involves alleging and/or demonstrating "the
failure of the government to respond to a need (for example, training of employees) in such a manner as
to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional
violations." *Blue*, 811 F.3d at 19 (quoting *Baker*, 326 F.3d at 1306) (some internal quotation marks
omitted). DRDC's complaint contains no allegations that could plausibly support this theory of
municipal liability, and DRDC advances no arguments related to establishing municipal liability in this
way. (*See generally* Pl.'s Opp'n; Tr.)

law.  (*See generally* Defs.' Mot.; Defs.' Reply; Tr.)  *See Page*, 999 F. Supp. 2d at 284

(considering only the second prong of municipal liability where the underlying

violation of law was conceded).  Thus, Defendants rest their argument to dismiss Count

2 on the *second* prong of municipal liability, insofar as they contend that DRDC has not

plausibly alleged facts that are sufficient to support any theory of municipal liability for

the alleged violation.[7]

To this end, Defendants first argue that DRDC has not sufficiently alleged that

the District had an explicit policy to violate the DD and PAIMI Acts.  (*See* Defs.' Mot.

at 20–21.)  DRDC responds that "[a]n explicit written policy is not required in order to

establish a 'policy or custom' for purposes of a [Section] 1983 claim," (Pl.'s Opp'n at

34), and also explains that "the actions of the policy maker are sufficient to establish a

policy[,]" (*id.* at 35).  Thus, it appears that DRDC is not actually attempting to establish

municipal liability through an explicit policy, which explains why its complaint is

entirely devoid of any allegation that such a policy existed.  (*See generally* FAC*; see

also* Pl.'s Opp'n at 38 (arguing that "DRDC sufficiently has pled a [section] 1983 claim

both by alleging facts that demonstrate that the District's policymaker acted to deny

access and refused to provide timely access to records and also that the District has a

custom and practice demonstrating a policy because the District has persistently acted

in violation of the PAIMI and DD Acts.").)

With respect to DRDC's contentions regarding the actions and intentions of

District policymakers, Defendants maintain that DRDC has not sufficiently alleged

---

[7] Because DRDC has brought the first count of the complaint pursuant to its statutory rights as the P&A system under the DD and PAIMI Acts, rather than under Section 1983, Defendants' municipal liability argument applies only to Count 2.  (*See* Tr. at 45:24–46:5.)

municipal liability through the action of any policymaker, because "there are no allegations concerning the individual or individuals who withheld timely production of records or their authority to render final policy decisions[.]" (Defs.' Mot. at 21; *see also* Defs.' Reply at 14–16.) DRDC insists that its complaint relates to the actions of two District policymakers: "DYRS'[s] General Counsel [who] is the individual who acted on behalf of DYRS regarding DRDC's records requests" and "DYRS'[s] Director, Neil Stanley, [who] was a direct recipient of correspondence concerning DYRS'[s] refusal to provide information in response to DRDC's requests." (Pl.'s Opp'n at 35.) But DRDC made no reference to either of these individuals in the amended complaint. (*See generally* FAC; *see also* Tr. at 38:23–39:2.) In fact, DRDC fails to describe the actions of *any* individual, much less one who is also alleged to be a policymaker. *See Triplett v. Dist. of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) ("The issue of final policymaking authority is one of state law." (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989))); *see also Byrd v. Dist. of Columbia*, 807 F. Supp. 2d 37, 75–76 (D.D.C. 2011) (finding that plaintiffs had not pleaded municipal liability based on the action of a policymaker where they "failed to identify any portion of the D.C. Code specifically granting [policymaking] authority" to the alleged policymakers).[8]

The D.C. Circuit has clarified that in order to plead a plausible claim of municipal liability through "'the action of a policy maker within the government,'" *Blue*, 811 F.3d at 19 (quoting *Baker*, 326 F.3d at 1306), a plaintiff needs to at least

---

[8] While DRDC's amended complaint mentions in passing that DRDC staff spoke with DYRS's assistant general counsel on the phone, it does not describe the substance of the conversation or any subsequent action by that individual. (*See* FAC at ¶ 37.) At the motion hearing, DRDC told the Court that it had attached correspondence with government officials from 2014 to the complaint (*see* Tr. at 38:23–39:15), but neither the initial nor the operative, amended complaint includes any such attachments (*see* Compl.; FAC).

allege (1) that the relevant individual engaged in an action and (2) that such actor was a policymaker, *see id.* at 19–20 (explaining that a court cannot assess whether a policymaker's action or decision established municipal liability unless the plaintiff has adequately described the contours of the challenged conduct and that the actor is a policymaker); *see also Coleman v. Dist. of Columbia*, 828 F. Supp. 2d 87, 91–92 (D.D.C. 2011) (dismissing claim of municipal liability where the complaint failed to establish that two officials were policymakers); *cf. Ryan v. Dist. of Columbia*, 306 F. Supp. 3d 334, 343–45 (D.D.C. 2018) (rejecting municipal liability at summary judgment where plaintiff failed to support "bald assertions" that the D.C. Fire Chief is a policymaker). DRDC does not make either allegation in its amended complaint; therefore, its pleading fails to allege a "custom or policy" for the purpose of Section 1983 municipal liability based on the conduct of any purported policymaker.

Finally, DRDC's amended complaint cannot be fairly read to allege a "custom or policy" that is sufficient to support municipal liability based on the examples it provides. "When a plaintiff seeks to establish municipal liability in the absence of an explicit policy, he must allege 'concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists.'" *Ryan*, 306 F. Supp. 3d at 346 (quoting *Page*, 999 F. Supp. 2d at 284). And "[t]o clear this high hurdle, plaintiffs ordinarily couch 'custom or practice' liability on allegations of practices so persistent and widespread as to practically have the force of law." *Id.* (internal quotation marks and citation omitted). Here, DRDC merely cites "four alleged isolated incidents of three separate District agencies failing to timely provide records over a four-year period[,]" as Defendants maintain. (Defs.' Mot. at 22; *see also id.* at

22–25; Defs.' Reply at 13–14, 16–18.) This smattering of alleged violative conduct falls far short of meeting the high threshold for municipal liability, and DRDC's complaint is otherwise devoid of the kinds of facts that might provide illuminating context for DRDC's assertion that the alleged incidents constitute a custom or practice—for example, the complaint says nothing about the frequency with which DRDC requests records from any agency, or the overall rate at which the District fails to timely provide records as required by the DD and PAIMI Acts. (*See generally* FAC.)[9]

DRDC also suggests that because it is the only possible plaintiff that can bring these claims through its role as the sole P&A system of the District of Columbia, the custom and practice standard should be relaxed. (*See* Pl.'s Opp'n at 37 n.11.) But it cites no authority for this proposition. And notwithstanding the unique relationship between DRDC and the District, DRDC's role, standing alone, does not give rise to any inferences about the frequency and nature of the interactions between these parties: DRDC could have made four requests in total to the District for records over the past five years, or it could have made 400 or 4,000. The existence of a custom or practice simply cannot be divined based on the scant facts DRDC alleges.

Even if DRDC's amended complaint adequately alleged that the District has a custom or practice of failing to provide records timely each time DRDC requests them, DRDC's pleading is still missing the necessary "causal link" between the various

---

[9] At the hearing, DRDC's counsel represented that DYRS has "never" timely provided records. (*See* Tr. at 5:21–6:3; 11:9–11:12; 11:18–11:21.) This allegation, if made with supporting facts, might be sufficient to establish municipal liability; however, it does not appear in DRDC's pleading, to which the Court's Rule 12(b)(6) analysis is limited. *See Tyson*, 306 F. Supp. 3d at 369; *see also Kingman Park Civic Assoc. v. Gray*, 27 F. Supp. 3d, 160 n.7 (D.D.C. 2014).

agencies' denial of DRDC's records requests and an unlawful policy or practice that had been "promulgated or sanctioned by the municipality." *See Page*, 999 F. Supp. 2d at 284–85 (internal quotation marks and citation omitted). Plausible "custom or policy" claims require more than just frequency; they also require facts from which a court can plausibly infer that the defendant municipality promoted or condoned the unlawful conduct such that imposing municipal liability is appropriate. *See id.* It is true that, in some circumstances, where this necessary causal link exists, even a single instance of alleged misconduct may be sufficient to plead municipal liability. (*See* Pl.'s Opp'n at 36.) *See also Atchinson v. Dist. of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (explaining that "'proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*' absent proof that the activity was caused by a municipal policy" (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality))). Here, however, DRDC has failed to allege municipal liability through a custom or practice because it has pleaded no facts supporting the existence of a municipal policy beyond the four instances in which the District allegedly employed it. *See Paul v. Dist. of Columbia*, 815 F. Supp. 2d 193, 198 (D.D.C. 2011) ("Merely stating that certain actions constitute a municipality's 'official policy,' without more, is not enough to survive a motion to dismiss because '[t]hese are the kind of naked assertions which both *Iqbal* . . . and *Twombly* . . . have firmly rejected.'" (quoting *Harris v. Dist. of Columbia*, 696 F. Supp. 2d 123, 129 (D.D.C. 2010) (alteration and ellipses in original))).

Thus, this Court concludes that DRDC has not come close to clearing the "high hurdle[,]" *Ryan*, 306 F. Supp. 3d at 346, of demonstrating municipal liability through

custom or practice, *see, e.g.*, *Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 40 (D.D.C. 2012) (finding insufficient allegations of a policy or practice where the plaintiff cited "only four incidents where fire department management allegedly failed to respond to his requests to provide more information [about] and to investigate his being placed on leave"); *see also Carter v. Dist. of Columbia*, 795 F.2d 116, 123–24 (D.C. Cir. 1986) (rejecting the argument that evidence of 13 "actual instances of misconduct" was "sufficient to demonstrate a pervasive pattern"). As a result, the Court will grant Defendants' motion to dismiss Count 2 for failure to state a claim upon which relief can be granted.[10]

### C. DRDC's Official Capacity Claims Against Mayor Muriel Bowser And DYRS Director Clinton Lacey Are Duplicative

It is well established that claims "that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available" are duplicative, *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010), and that a district court may exercise its discretion to dismiss them, *see DTCC Data Repository LLC v. U.S. Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9, 18 (D.D.C. 2014). Moreover, courts have long made clear that bringing a claim against an individual employee of the District of Columbia in her official capacity is simply another way to bring a claim against the District. *See, e.g.*, *Cooke-Seals v. Dist. of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997). In general, when a claim is brought against a District official *and* the District, the two claims "merge," becoming the "functional equivalent" of one another, *id.* (emphasis omitted); thus, courts in this

---

[10] Because the Court is dismissing Count 2 based on this ground, it will not address Defendants' arguments that Count 2 should be dismissed as duplicative. (*See* Defs.' Mot. at 25; Defs.' Reply at 18–19; *see also* Pl.'s Opp'n at 38–40.)

jurisdiction often exercise their discretion to dismiss official capacity claims brought against District officials as duplicative of identical claims brought against the District, *see, e.g.*, *id.*; *N.B. v. Dist. of Columbia*, 244 F. Supp. 3d 176, 188 (D.D.C. 2017).

In the instant case, Defendants have moved to dismiss DRDC's claims against Mayor Muriel Bowser and DYRS Director Clinton Lacey, in their official capacities (*see* Defs.' Mot. at 28–29), as duplicative of DRDC's claims against the District, and DRDC's amended complaint makes clear that the claims against those individual defendants are identical to the claims that DRDC has brought against the District (*see* FAC at ¶¶ 45–65). In fact, neither Bowser nor Lacey are mentioned anywhere in the complaint beyond the paragraphs identifying them as defendants in their official capacity. (*See generally id.*) Furthermore, as Defendants have noted in their reply, "'[a]ny injunctive relief that the Court might grant against the District of Columbia will be binding as to both defendants'" as well as to anyone else who ultimately holds the individual defendants' positions. (*See* Defs.' Reply at 21 (quoting *Zervas v. Dist. of Columbia*, 817 F. Supp. 148, 151 (D.D.C. 1993)).)

This Court agrees, and thus concludes that the claims that DRDC has brought against the individual defendants are duplicative of its claims against the District. Accordingly, the Court will exercise its discretion to dismiss the individual defendants from this case. *See, e.g.*, *N.B.*, 244 F. Supp. 3d at 178, 189 (dismissing claims seeking declaratory and injunctive relief against individual defendants in their official capacity when the District was also a defendant).

## IV.    CONCLUSION

For the reasons explained above, this Court concludes that DRDC's claims are not moot; however, DRDC has failed to plead municipal liability plausibly, and DRDC's claims against the individual defendants are duplicative of its claims against the District.  Therefore, as set forth in the accompanying Order, Defendants' motion to dismiss will be **GRANTED IN PART and DENIED IN PART**, as follows: all claims against the individual defendants in Counts 1 and 2 will be dismissed, and Count 2 will be dismissed in its entirety.


DATE:  March 30, 2019                     *Ketanji Brown Jackson*
                                          KETANJI BROWN JACKSON
                                          United States District Judge